Good morning, may it please the court. My name is Eitan Kasteljanich and I'm representing Astrue Wilson in this appeal. Wilson is alleging that she has been disabled since September 2004 when she was 41 years old as a result of degenerative disc disease and severe back pain. She's now 48 years old. I will now address the main errors from the ALJ which require reversal. This case is fundamentally, the fundamental problem with the ALJ's decision here is that Ms. Wilson's treating physician, Dr. Stout, who had treated her for three years, was asked to answer some questions about whether his opinion about her limitations. He completed a questionnaire in which he described in detail the many limitations he felt she had. This is the uncontradicted opinion of a treating physician which is entitled to the highest weight under social security law. And yet, the ALJ gave this opinion no weight at all. The ALJ gave six reasons for giving this opinion no weight. In my brief, I address each reason. None of the reasons are convincing. In fact, I don't think any of the reasons are even legitimate which in this case because it's uncontradicted medical evidence, the standard of review is these reasons have to be specific and convincing. Now the problem I had with his opinion was that there was a, and I can't remember what it was now, but at the end he put her on a new regimen which apparently improved her quite a bit, but yet he didn't acknowledge that very shortly after that and sort of referred back to previous diagnoses or situations before she had gone on the medication that actually improved her situation and that did raise some issues. I was not the attorney at the hearing in this case. Unfortunately, after the, there was about a six month lag between the hearing and the decision and the attorney who was that she had, the medication didn't work and she had to go back off it, but we've got the record that we've got here and even under that record, the note that, the only note that the ALJ uses that could arguably justify that there's a conflict within Dr. Stout's opinion, that treatment note says, well now she's able to do her ADLs but she's still limited to part-time work. So even what's happened here, the ALJ says, well I'm going to reject everything Dr. Stout says, all of his opinion because he's got this one treatment note that says she can do her ADLs and part-time work, but then he doesn't even credit that. He then, so he uses that to reject everything that Dr. Stout says and then having done that, doesn't accept it. Well, even when she was doing better, Dr. Stout was still saying that she was limited to part-time work and that was one isolated treatment note. Three weeks before that, she was doing very badly and that does not explain the several years beforehand as well where she was doing very badly. Would there not have been some opportunity to bring that to somebody's attention when the supposed new medication that was working quit working? Could that not have gone to the appeals council or somewhere? Should it have? Yes, it should have. I, you know, my first encounter with this case was in district court. But, once again, even assuming that that one reason is an acceptable reason to reject all of Dr. Stout's three years of experience of treating this person with narcotic medication and seeing, measuring her range of motion limitations, measuring her positive SLR, these are objective findings. There's an MRI that was done that shows objective evidence and the ALJ mentions the MRI, but doesn't fully credit it. The other thing that, go ahead, I'm sorry. Is it anywhere in the record that this new medication quit working? Was there any effort to bring it to the district court? I mean, we have nothing other than you just told us this now. We have to treat that as a, we can't assume that here because it's not in the record, okay? I know that from talking to her. But there was, there is, in fact, I don't think it would have been appropriate even in district court to bring it up because it was not in the record. We are limited to the record here. And what I am arguing is that even assuming, if, I see, I think it is contradictory for the ALJ to say, this is the only treating source opinion in the record. There's nothing that contradicts it. And I'm going to get to what, the one thing that he, the other thing he uses that contradicts it, which is the state agency's opinion. There's a state agency opinion, a form that was filled out prior to most of Dr. Stout's treatment records. It was filled out by a person whose name is a scribble, has no credentials, no place in the record is that person identified. The ALJ calls that person. Are you referring to the document that also has Dr. Hoskins' name stamped on it? That's right. Dr. Hoskins signed the initial H and said affirmed, and circled affirmed on that opinion. But that opinion, that form was filled out, well, even assuming that that person was actually a physician, it was filled out prior to most of the evidence from Dr. Stout. So they didn't review the entire evidence. They didn't review any of the evidence from Dr. Velling. They were, they, it was, it was evidence, it was an opinion based on a very incomplete record. So for that reason alone, it shouldn't be entitled to much weight. But Dr. Hoskins didn't provide any explanation whatsoever as to why he was affirming. He simply circled affirmed. And the weight that's given to a non, to a non-examining physician's opinion is direct, is under the law, and I cite the regulation and the Social Security Ruling, is directly related to the explanation that they give. If they give no explanation at all, they, their opinion isn't entitled to as much weight. The other thing that's going on here is the, there is no mention in the ALJ's decision of the medication side effects that Ms., that Wilson was experiencing. These are listed in the doctor's, in Dr. Stout's questionnaire where he listed narcotic medications were causing constipation, impaired concentration, and she testified at length about this. The ALJ doesn't discuss it. This is key evidence that must be discussed by an ALJ in evaluating a claimant's credibility. But he didn't discuss it. Another thing is that finding, labeling what's happened here, and it had, we see this quite often these days. Esther Wilson was experiencing extreme pain and was extremely limited, and yet, and she had medical diagnoses that documented that she had conditions that could cause the pain, yet she's labeled as not credible, and then because she's supposedly not credible, the doctor's opinion is, Dr. Stout's opinion is also labeled as rejected because it's based on her not credible complaints. But Dr. Stout never once questions her complaints. And I believe Ryan Case discusses that in the context of an examining physician. Here we have a treating physician who totally accepted that she was in this extreme pain and was requiring epidural steroid injections and narcotic medication. This is not a legitimate reason or a convincing reason to reject Dr. Stout's opinion. Finally, the other error here involves the lay testimony. The ALJ doesn't discuss it. That error alone requires reversal. The ALJ does not discuss the lay statement from Wilson's husband and her son, and they detail in lay, at length, the problems that they observed her having, and the ALJ just says, well, they described severe problems, but I reject it for this, and he doesn't even say, excuse me, this was a post-hoc reason. He doesn't give any reason at all for rejecting that evidence. He just mentions it very briefly, a few words, and then he moves on. So these are the reasons that this case should be reversed, and I'd like to reserve the balance of my time for a moment. Thank you. Good morning, Your Honors. Good morning, Counsel. Brad Ekelberg, representing Commissioner Astru. Your Honors, the ALJ's decision in this case is supported by substantial evidence, contrary to Ms. Wilson's claims, that there is no reason given for rejecting Dr. Stout's opinion. In this case, the ALJ's decision looked at and depended upon, in the record, three MRI exams, an electromyelogram by Dr. Ma, physician's opinions by Dr. Panzer, an examining psychiatrist, the state agency physicians that Counsel referenced, as well as Dr. Stout's treatment notes. Now, Counsel claims, Ms. Wilson claims, that the ALJ's reasons for rejecting Dr. Stout's August 2007 lumbar RFC opinion are insufficient. Commissioner would point to the multiple reasons that were listed by the ALJ, including the fact that Dr. Stout's August 2007 opinion, two months after he had declared that she was capable of performing her activities of daily living, she was at least ready to perform part-time work, and he had discovered that the duragesic patches were an effective treatment for her pain. On June 22, 2007, she reported her symptoms as mild. The duragesic patches were working, and the significance of this particular note is the fact that it is the last note in Dr. Stout's treatment records prior to the August hearing. Did the ALJ actually reject Dr. Stout's opinion? I didn't quite read it that way. Well, it's interesting, Your Honor, because the ALJ did point to and rely upon Dr. Stout's treatment notes, and the district court, in fact, pointed to fairly unremarkable examinations that had occurred during 2006. I could cite some normal physical exams, for instance, from March, May, August, and October of 2006, page 375, 385, 394, 399 in the record. The August 2007 opinion was not supported by those treatment notes, so the ALJ was looking at Dr. Stout's treatment notes. In addition, on that August 2007 report, Dr. Stout didn't give him an opportunity to have any discussion or description of the basis for his opinion. It was a checkbox listing type of form. He had an opportunity at the end of the hearing to include a narrative report to attach additional sheets. He did not take that opportunity. Those types of checkbox reports without narrative support for explanation, that is a valid reason to be rejected by the administrative law judge. Dr. Stout referenced in that August 2007 report, he went back and just documented his clinical findings from September 29, 2004, when Ms. Wilson first came in after injuring her back in her garden. Dr. Stout also referenced a 2005 magnetic resonance imaging study done by Dr. Rice. Between those references in September of 2004 and the magnetic resonance image in 2005, Dr. Stout comes in August 2007 but doesn't talk about his June 2007 findings. As well, if you look at the form on the first page of that opinion of August 2007, Dr. Stout concludes his diagnosis is lumbar pain with an electromyelogram done by Dr. Ma and discussed by Dr. Velling, in which Dr. Ma concluded after doing a functional test of Ms. Wilson's nerves coming from her back that she had no acute or chronic evidence of nerve damage. Something about this record that disturbed me to some degree, it seems to me that our cases require us to credit the testimony about the pain level. We have to rely on what the claimant tells us. And there's a wide variety as to how much pain different patients have experienced from the same physical condition. So we do need to give weight both to her testimony and to those around her who are observing her. That seems to me that the AOJ did not credit her in the way that he should have. Well, Your Honor, he did take into account her pain and that's why he modified her, his finding that she could perform a modified form of light work. When an individual has displaced inconsistent pain behavior, has inconsistent statements about their pain, those claims of debilitating symptoms can be discredited by the AOJ. And I think that can be discredited when the person's statements or behavior are inconsistent with it. And the sources of authority for that would be the Social Security Ruling 96-7-P and the Batson case. But looking at this particular record, it seems that she was consistent about her testimony. Yes, and the issue about her pain is that it was being treated. Dr. Stout did find that medication that alleviated her pain. The duragesic patches were alleviating her pain and that is in the June 22, 2007 treatment notes that her pain symptoms when she was on medication on the duragesic were mild. She reported them as mild. She was invested and interested in continuing the duragesic treatment and it was working. Dr. Velling also did administer epidural injections which stopped the shooting pains. It was only 30% effective in terms of treating her pain and it was moderately effective in Dr. Velling's words. But nonetheless she was responding positively to the medications. When there's a finding that a person can do part-time work, is there then an investigation as to what the compensation would be for that? Whether it would be adequate or what do we do with that? I don't think I've seen a case. Well in terms of at the step one there would be an investigation in terms of whether part-time work would constitute substantial gainful activity. Would they make enough money for it to be substantial gainful activity? What's in our record that shows that? Well in our record this comes up, the part-time, the declaration that she can work part-time is that she can at least work part-time. Yeah but what about whether it's substantial? That is not in the record. The ALJ did rely upon vocational expert testimony. It presented Ms. Wilson's symptoms and impairments to the vocational expert and the vocational expert did identify jobs that she could do with this modified range of light work. Full-time jobs? Yes, Your Honor. That she would be able to work. The ALJ did identify, I mean the vocational expert did identify jobs that she would be able to do. What do we do with the testimony of her husband and son? Were those considered by the ALJ? They were considered by the ALJ contrary to Ms. Wilson's perspective on this matter. The ALJ downplayed that saying that they were exaggerating? Yes Your Honor. Here's what the ALJ did. It's on page 21. The ALJ equated the description by the husband, son and Ms. Wilson and he said that since their testimony was inconsistent with the medical evidence per Bayless, that was his basis for rejecting their testimony. He took it into account. He took into account her pain and her side effects from medication in his residual functional capacity finding but he per Lewis rejected their testimony for the same reason he rejected Ms. Wilson's testimony. If you look at Dr. Panzer's notes for instance, Dr. Panzer said that when he came for her examination she displayed no signs of pain behavior. She talked about going out to the movies and dinner with her husband. He described her as in a good mood and happy despite the fact she came into him with an examination claiming chronic pain and inability to stand. Your Honors, I notice that I'm beyond my time. I'd be happy to field more questions but the ALJ in this case properly evaluated the medical evidence, properly evaluated the patient's Ms. Wilson's credibility and lay witness testimony and his decision is supported by substantial evidence. The Commissioner would ask this court to affirm the ALJ's decision. Thank you very much Your Honors. So first I'd like to address Judge Fletcher. The ALJ actually rejects Dr. Stout's opinion on page 22. He says I don't give any weight to the opinion he expressed about all of those limitations. I'd like to turn back to the difference here. What the court really needs to be looking at is the comparison between pages 336 to 40 which is the questionnaire that was completed by Dr. Stout and the one treatment note from about three weeks earlier that was at page 404. The language in that treatment note, the precise language is on medications able to do ADLs, able to work part-time. So we'll grant them that. On her medications she's able to work part-time. Under Social Security law, a limitation to only being able to work part-time means that you are disabled. That is in Social Security Ruling 96.8p, Social Security Ruling 96.9p. I cite the Rollins case from the Ninth Circuit which supports that, that affirmed the Social Security's rulings that say work is full-time work. The one exception to that is if you have past relevant work that was part-time work and you're able to do that and it would achieve SGA, that's a different story. That's not even, that's not in this case. Well the ALJ is required to defer to the treating physician's medical opinion but not to his vocational expertise in terms of what's full-time, what's part-time. If he had said some specific limitations that then could be translated by a VE into part-time work, that might be something that would have to be deferred to. But his conclusion of part-time versus full-time is not medical expertise, it's vocational expertise. What I'd like to look at is there isn't a real conflict between that questionnaire and that statement that she's limited to part-time work. Because in his questionnaire he said she could stand two hours, she could sit two hours. He didn't say she couldn't do anything. And there's no actual conflict between those two pieces of evidence. And you're right, nobody has to, the ALJ doesn't have to defer to vocation, strictly speaking to vocational opinion because what really matters, they do have to defer to opinion about what are limitations, her lifting limitations, her standing, her sitting, her need to lie down, her need to change positions. He didn't just say a couple things, he didn't just check a couple boxes. He filled out that form, there's a lot of handwritten things in there. And the ALJ said he didn't explain the bases of his opinion. They're written there in his handwriting. And I urge you to read that. That's the key here. This ALJ rejected a treating physician's opinion, it's uncontradicted. Jody Freeman-Smith Did he not use those limitations in his hypothetical to the VE? Absolutely not. Not even close. They were used after the ALJ was done asking a string of hypotheticals, it didn't use those limitations. Wilson's attorney added those limitations and every time he added one of the limitations, another, he added them all separately. And every time it resulted in, this person can't work. No, the ALJ didn't include any of those limitations in his residual functional capacity assessment. Thank you. Thank you.
judges: Wilken, Fletcher B. , Bybee